PENSKE LOGISTICS, INC., Plaintiff,

v.

KLLM, INC., Defendant.

No. CIV.A. 01–5365.

United States District Court,
D. New Jersey.

Sept. 22, 2003.

Robert Paul Clark, Sea Girt, NJ, for plaintiff.

George W. Wright, Narinder S. Parmar, George W. Wright & Associates, LLC, Hackensack, NJ, John T. Husk, Seaton & Husk, P.C., Vienna, VA, for defendant.

## MEMORANDUM OPINION

WOLIN, District Judge.

This matter is before the Court upon a motion for summary judgment and a cross motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Penske Logistics, Inc. ("Plaintiff") filed a motion for summary judgment for indemnification against defendant KLLM, Inc. ("Defendant") based on a contract between the parties. Defendant thereafter filed a cross motion for partial summary judgment, limiting the amount of liability based on the Carmack Amendment, 49 U.S.C. § 14706. This matter is decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below the Court will (1) deny Plaintiff's motion for summary judgment, and (2) grant Defendant's cross motion for partial summary judgment.

## BACKGROUND

On January 1, 1991, Pepsico and Goldstar, a wholly owned subsidiary of Plaintiff, entered into a Transportation Agreement, ("Pepsico Agreement"), whereby Plaintiff

agreed to transport Pepsi product. The Pepsico Agreement provided that each transportation was to be accompanied by a receipt, also known as a Bill of Lading, and that in the event there was any conflict between the Bill of Lading and the Pepsico Agreement, the Pepsico Agreement would prevail. In addition, the Pepsico Agreement provided that Penske would be liable "for any loss or damage to any Commodity of Shipper ... to the extent such loss or damage is proximately caused by the negligence of Carrier, its employees, agents or subhaulers."

On July 1, 1998, Plaintiff and Defendant entered into a Transportation Agreement, ("KLLM Agreement"), whereby Defendant agreed to transport goods "consigned by one or more shippers represented by Penske." In the KLLM Agreement, as well as on the Bills of Lading, Penske is designated as a "shipper." Similar to the Pepsico agreement, the KLLM Agreement provided that each transportation made be accompanied by a receipt, or Bill of Lading, and that in the event of an inconsistency between the Bill of Lading and the KLLM Agreement, the KLLM Agreement prevailed.

In addition, the KLLM Agreement contained the following relevant provisions:

*Cargo Loss.* Carrier will be liable, as a common carrier, for all loss or damage to the Goods occurring while in Carrier's care, custody or control and will respond to all claims for loss or damage to the Goods in accordance with the provisions of 49 U.S.C. 14706 and 49 CFR Part 1005.

*Contract Carriage.* All Services will be provided as "contract carriage" within the meaning of 49 U.S.C. § 13102(4)(B), and Penske and Carrier each expressly waive all rights and remedies they may have as to each other, and Carrier expressly waives all rights and remedies it may have as to any shipper of Goods hereunder, under 49 U.S.C., Subtitle IV, Part B (excluding §§ 13703, 13706, 14101 and 14103) to the extent that such rights and remedies conflict with the terms of this Agreement and as permitted by 49 U.S.C. § 14101(b)(1), each as amended from time to time. Except as otherwise stated in this Agreement, neither party waives any rights or remedies it may have as to any third party.

*Indemnification.* Carrier will defend, indemnify and hold harmless Penske and any Shipper served under this Agreement and each of their respective employees, agents and affiliates from and against all claims, liabilities, losses, damages, fines, penalties, payments, costs, expenses and reasonable legal fees, resulting from bodily injury or property damage caused by the acts or omissions of Carrier, its employees or agents, in their respective performance of the Service, or Carrier's failure to comply with its obligations under this Agreement, except to the extent that such injury or damage is caused by Penske's or the Shipper's negligence.

On May 8, 2000, Defendant undertook the transportation of three shipments of Pepsi product from Plaintiff's Edison, New Jersey facility. Three Bills of Lading were issued to Defendant with Plaintiff listed as the shipper; numbers 60869 and 60870 were for delivery to West Virginia, and number 60871 for delivery to Ohio. Number 60871 included fifty-seven pieces of Mountain Dew concentrate and stated on its Bill of Lading that the product be kept at forty degrees Fahrenheit, as well as the notation, "[t]he agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding $1.50 per pound."

When Defendant's driver, Luz Marie Tehrani, arrived at the Ohio location, the

Warehouse Supervisor, Brian Shope, a Pepsico employee, noticed that the refrigeration unit was not on in Tehrani's truck. Tehrani admits that the refrigeration unit had not been on since her first stop in West Virginia. Based on this, the shipment was rejected and later destroyed by Pepsico.

Defendant admits that it is the driver's responsibility to turn the refrigeration unit on and off when necessary and that there were no reported problems with the refrigeration unit in Tehrani's truck on the day of the delivery. While the truck did have a mechanism which would provide a readout of the temperatures inside the truck, Defendant's attempt to download that information was unsuccessful. Plaintiff did not take a temperature reading of the truck or inspect the product for spoilage. Instead Plaintiff, through the Pepsico representative at the Ohio destination, engaged in a visual examination in making its determination to reject the goods.

The Bills of Lading were prepared by Pepsico and Plaintiff. Pepsico provided the information to Plaintiff who then filled it in and printed out the form. Defendant has transported many shipments both before and after the shipment in question, all with the Bills of Lading having pre-printed language declaring the product value not to exceed $1.50 per pound. Defendant's representative, Mat Tallant stated in his deposition that a rate schedule was prepared and given to Plaintiff but that he was unsure whether Plaintiff had it at the time of the incident.

On June 12, 2000, Pepsico made a claim for reimbursement of the destroyed product and Plaintiff reimbursed Pepsico in the amount of $59,283.03. Plaintiff then sought reimbursement from Defendant for the same amount based on the Indemnity provision of the KLLM Agreement. Defendant refused, and this lawsuit ensued.

## ANALYSIS

Plaintiff moves for summary judgment on its claim for indemnification and Defendant moves for partial summary judgment for a limitation of their liability. To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

When considering a motion for summary judgment, all evidence submitted must be viewed in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden of showing that no genuine issue of material fact exists rests initially with the moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Once that party submits a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. *See* Fed. R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To make that showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party must come forward with "specific facts showing that there is a triable issue." Fed.R.Civ.P. 56(e). "[T]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252,

106 S.Ct. 2505. Further, if "the evidence [submitted by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505.

A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Thus, "[s]ummary judgment may present the district court with an opportunity to dispose of meritless cases and avoid wasteful trials." *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996).

In a motion for summary judgment where the issue is one of contract interpretation, summary judgment is only proper where the contract is clear and unambiguous as a matter of law, meaning that the contract can be read only one way. *Starr v. Katz,* 1994 WL 548209, at *7 (D.N.J. Oct. 5, 1994). If an ambiguity is found then summary judgment is precluded because the ambiguity creates a question of fact only a factfinder can resolve. *Id.* In evaluating whether a contract is ambiguous a court should not "torture the language of a contract to create ambiguity where, fairly considered, none exists." *Id.* Instead, the court considers the words used in the contract as well as counsel's suggested alternative meanings, supported by extrinsic evidence. *Id.* If a reasonable inference in the nonmovant's favor regarding the interpretation of a contract can be found from any evidence, regardless of source, then summary judgment cannot be granted. *Vanguard Telecomm., Inc. v. Southern New England Tel. Co.,* 722 F.Supp. 1166, 1178 (D.N.J.1989).

### A. *PLAINTIFF'S MOTION FOR DETERMINATION OF LIABILITY BY DEFENDANT FOR DAMAGE TO THE GOODS*

Plaintiff contends that Defendant's act of not keeping the refrigeration unit oper-ating in the truck damaged the Mountain Dew concentrate. Defendant claims that Plaintiff has not presented enough evidence to infer damage.

The Carmack Amendment to the Interstate Commerce Act created a "nationally uniform policy governing interstate carriers' liability for property loss." *A.T. Clayton & Co. v. Missouri–Kan.–Tex. R.R. Co.,* 901 F.2d 833, 834 (10 Cir.1990) (quoting *New York, New Haven and Hartford R.R. Co. v. Nothnagle,* 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1953)). Under the statute, in order for a plaintiff to prove liability before recovering the actual value of goods, the following three elements must be shown: "(1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) the amount of damages." *Beta Spawn, Inc. v. FFE Transportation Services, Inc.* 250 F.3d 218, 223 (3d Cir.2001) (quoting *Conair Corp. v. Old Dominion Freight Line, Inc.* 22 F.3d 529, 531 (3d Cir.1994)). In establishing what type of condition the goods arrived in, a claimant must provide reliable evidence, direct or circumstantial, that proves the condition of the goods by a preponderance of the evidence. *Beta Spawn,* 250 F.3d at 225.

Here, Plaintiff has not provided any direct evidence, such as actual testing of the product, nor any circumstantial evidence, such as the outside temperature on the day of the delivery. Plaintiff's only offer of proof is Tehrani's admission that the refrigeration unit was not on since her first stop and this does not shed any light on whether not having the refrigeration unit on actually damaged the product. Plaintiff has failed to show by a preponderance of the evidence that Defendant's act resulted in property damage for which the Cargo Loss provision found in the

KLLM Agreement can be invoked. Therefore, Plaintiff's motion for summary judgment as to this point is denied.

### B. PLAINTIFF'S CLAIM FOR IN-DEMNIFICATION AND DEFEN-DANT'S CROSS CLAIM TO LIM-IT LIABILITY.

Under the Carmack Amendment, the liability imposed is for the "actual loss or injury to the property." 49 U.S.C. § 14706(a). An exception exists, hereinafter referred to as the release rate exception, which allows a carrier to limit its liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A).

 This written declaration can be a receipt or bill of lading. The bill of lading "operates as both the receipt and the basic transportation contract between the shipper/consignor and the carrier, and its terms and conditions are binding." *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1050 (3d Cir.1993). Because the bill of lading is a contract, it is subject to the general principles of contract law. *Id.*

 To invoke the release rate exception, a carrier must show that (1) a "valid written contract between the parties [established] a reasonable value," *Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1270 (11th Cir.2001), (2) a tariff was available to the shipper, and (3) a copy was presented to the shipper if requested, *Nieman Marcus Group, Inc. v. Quast Transfer, Inc.*, 1999 WL 436589 at *4 (N.D.Ill. June 21, 1999). The Eleventh Circuit has recently stated that a carrier is also required to "give the shipper a reasonable opportunity to choose between different levels of liability," *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 842 (11th Cir.2003). However, where a shipper, rather than the carrier, drafts the bill of lading and chooses the release rate, the limitation of liability rate found on the bill of lading will be enforced against the shipper. *Siren*, 249 F.3d at 1274; *American Cyanamid Co. v. New Penn Motor Express, Inc.*, 979 F.2d 310, 314 (3d Cir.1992).

Under the Carmack Amendment, a shipper and carrier are further allowed to "expressly waive any or all rights and remedies" if in writing, and such contract "may not be subsequently challenged on the ground that it violates the waived rights and remedies." 49 U.S.C. § 14101(b)(1). This section shall hereinafter be referred to as the "waiver" provision.

As an initial matter, the parties dispute whether the waiver section was sufficiently invoked, that is, whether the KLLM Agreement successfully contracted around the provisions of the Carmack Amendment. Plaintiff argues that the attempted waiver found in the Contract Carriage section of the KLLM Agreement is effective and therefore Defendant cannot utilize the release rate exception of the Carmack Amendment as a "right or remedy." Plaintiff's position is that the Indemnification provision of the KLLM Agreement prevails over the release rate exception and that Defendant should reimburse Plaintiff for $59,283.03, the full amount that Plaintiff paid to Pepsico. Defendant contends that the KLLM Agreement did not successfully contract around the Carmack Amendment and if found liable, recovery is limited to $6,859.50 (4,573 pounds at $1.50) under the release rate exception. According to Defendant, the Contract Carriage Provision does not explicitly refer to the release rate exception as one of the

"rights or remedies" that is waived and because the Cargo Loss provision does specifically refer to 49 U.S.C. § 14706, which contains the release rate exception, the exception is applicable.

The limitation of liability language found in the Bill of Lading is applicable to limit Defendant's liability whether this issue is construed as one of classic contract interpretation or as within the provisions of the Carmack Amendment. Therefore the Court makes no determination of whether the Contract Carriage provision in the KLLM Agreement conforms to the requirements of the Carmack Amendment's waiver provision.

Where a contract makes reference to another document, the two writings are considered a single instrument. 11 Richard A. Lord, *Williston on Contracts* § 30:25 (4th ed.1999); *United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO, Local 102 v. Lee Rubber & Tire Corp.*, 269 F.Supp. 708 (D.N.J. 1967), *aff'd,* 394 F.2d 362 (3d Cir.1968). Under the principles of contract interpretation, a contract should not be given an interpretation which renders a term or terms superfluous or meaningless. *Williston on Contracts,* § 32:11; *GNB Battery Tech., Inc. v. Gould, Inc.* 65 F.3d 615, 622 (7th Cir.1995) ("A contractual interpretation that gives reasonable meaning to all terms in an agreement is preferable to an interpretation which gives no effect to some terms"); *Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 27 (2d Cir.1988).

There are two contracts here, the KLLM Agreement, which contains the Cargo Loss, Contract Carrier, and Indemnification provisions quoted above, and the Bill of Lading, which contains the limitation of liability language that sets the value of the goods at $1.50 per pound. The KLLM Agreement incorporates the Bill of Lading by reference in section two, Receipts, which requires each movement of goods to be "evidenced by a written receipt."

In evaluating the two contracts as a single instrument, there stands only one reasonable reading of the four provisions at issue. The Cargo Loss and Indemnification provisions can be read in two ways, each rendering the same result. The Cargo Loss provision can be read as limiting the amount of indemnity under the Indemnification provision. Another reading would be that the Cargo Loss provision is applicable only in the event of "loss or damage to the Goods," while the Indemnification provision is applicable only to "property damage" apart from "Goods." Regardless of which reading, the Cargo Loss provision acts as a limitation on the amount of recovery and the Bill of Lading properly acts as a limitation of liability by setting forth a recovery value. The Contract Carriage provision is an attempt to contract out of the Carmack Amendment and its validity is immaterial, as discussed earlier. Any other reading of these provisions would render at least one of the provisions superfluous, a result not preferred under principles of contract interpretation.

In the alternative, if this issue were analyzed under the Carmack Amendment then the release rate exception requirements have been met and the limitation of liability found in the bill of lading is still effective. Plaintiff, relying on *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415, (7th Cir.1987), argues that in order to invoke the release rate exception, a carrier is required to meet a four part test: "(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to chose between two or more levels of

liability; and (4) issue a receipt or bill of lading prior to moving the shipment." Plaintiff's reliance is misplaced. The Trucking Industry Regulatory Reform Act of 1994, Pub.L. No. 103–311, tit. II, § 206, 108 Stat. 1673, 1684–85 and the ICC Termination Act of 1995, Pub.L. No. 104–88, tit. I, § 103, ch. 147, sec. 14706, 109 Stat. 803, 907–10, replaced §§ 11707, 10730 with the current § 14706, which no longer requires these four elements. *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 841 (11th Cir.2003) (acknowledging amendment and change in requirement for carrier to invoke the limitation of liability provision in section 14706).

As previously stated, under the current statutory scheme, the release rate exception is sufficiently invoked where a carrier can show that a written contract establishing a reasonable rate exists and that a tariff was available and given to the shipper upon request. Defendant meets these requirements. First, the Bill of Lading evidences a "valid written contract between the parties," and second, Defendant's representative testified in a deposition that a rate schedule was given to Plaintiff at some point prior to the incident giving rise to this litigation. Plaintiff does not dispute this fact. Finally, because Plaintiff and Pepsico, as shippers, drafted the Bill of Lading and chose the release rate amount, the requirement that a shipper choose between two levels of liability is inapplicable and instead the release rate should be enforced against the shipper draftsman. Therefore Plaintiff's motion for summary judgment as to indemnification is denied and Defendant's cross motion for partial summary to limit their liability is granted.

■ Defendant also makes the argument that since state and common law claims are preempted by the Carmack Amendment, Plaintiff is unable to bring this suit. It is true that state law claims involving carrier liability for damage to goods in interstate shipment are preempted by the statute. *Orlick v. J.D. Carton & Son, Inc.*, 144 F.Supp.2d 337, 345 (D.N.J. 2001). However, this situation is distinguishable because the KLLM Agreement attempts to contract around the provisions of the Carmack Amendment, an attempt that is authorized by the waiver provision of the statute.

## CONCLUSION

For the foregoing reasons the Court will deny Plaintiff's motion for summary judgment and grant Defendant's cross motion for partial summary judgment.

An appropriate Order is attached.

## *ORDER*

In accordance with the Court's Memorandum Opinion filed herewith,

It is on this 22d day of September, 2003

ORDERED that Plaintiff's motion for summary judgment is denied and Defendant's cross motion for partial summary judgment is granted.