**SPRAY–TEK, INC., Plaintiff,**

v.

**ROBBINS MOTOR TRANSPORTATION, INC., Defendant.**

No. 05 C 506 S.

United States District Court, W.D. Wisconsin.

April 5, 2006.

Richard A. Westley, Westley Law Offices, SC, Madison, WI, Douglas H. Wood, Seaton & Husk, LP, Vienna, VA, for Plaintiff.

Cynthia Buchko, Whyte Hirschboeck Dudek S.C., Madison, WI, Jeffrey P. Reilly, Miles & Stockbridge, PC, Baltimore, MD, for Defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Spray–Tek, Inc. commenced this action against defendant Robbins Motor Transportation, Inc. alleging defendant is subject to liability for cargo loss or damage pursuant to the Carmack Amendment to the Interstate Commerce Act 49 U.S.C. § 14706 *et seq.* because of its status as a regulated for-hire carrier. Plaintiff also alleges defendant is subject to liability based on the principles of promissory estoppel and unjust enrichment. Plaintiff seeks an award of ordinary and special damages in this action. Jurisdiction is based on 28 U.S.C. § 1331 and 49 U.S.C. § 14706(d). The matter is presently before the Court on cross-motions for summary judgment. Also presently before the Court are: (1) defendant's motion to strike the affidavit of Colin Barrett because plaintiff failed to previously disclose him as an expert witness; and (2) defendant's motion to strike plaintiff's reply brief and supporting affidavits because they were untimely filed. The following facts are either undisputed or those most favorable to the non-moving party.

## BACKGROUND

Plaintiff Spray–Tek, Inc. is engaged in the business of commercial dehydration of food flavor, pharmaceutical and soft chemical products. In 2003 plaintiff entered into a contract with Niro, Inc. (hereinafter Niro) in which Niro was to design and manufacture a fourteen foot diameter cone bottom drying chamber (hereinafter drying chamber) for plaintiff. Pursuant to the terms of the contract Niro was also responsible for shipping the drying chamber from its facility in Hudson, Wisconsin to plaintiff's facility in Bethlehem, Pennsylvania. The contract stated in relevant part:

**2.0  PRICING**

2.1  *Base Spray Dryer System*

For one (1) Niro–Bowen spray drying system with 14–ft. diameter, cone-bottom drying chamber, having a design production capacity as specified in Section 8.0 of this quotation, and including all scope of equipment and services as specified in this quotation document, F.O.B. points of manufacture in the U.S.A. Freight charges for shipment of mechanical scope to site are to be prepaid by Niro and invoiced to Buyer at-cost, utilizing Buyer's preferred carrier(s) where possible.

Price

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

$1,161,500.00

. . .IX. *RISKS OF LOSS.* The Purchaser shall bear the risk of loss of or dam-

age to the equipment and parts after delivery of the equipment and parts to the job site or to the shipping point if delivery F.O.B. shipping point is specified.

On October 14, 2004 Niro's representative Mr. David Thoen contacted defendant Robbins Motor Transportation, Inc. to obtain an estimate for transporting the drying chamber to plaintiff. Mr. Thoen spoke with Mr. Robert Kauffman, Jr. who serves as defendant's Southwest Regional Terminal Manager. Mr. Thoen provided Mr. Kauffman with information concerning the dimensions and estimated weight of the drying chamber as well as Niro's required pick-up and delivery dates which were October 18, 2004 and October 25, 2004 respectively. After receiving said information Mr. Kauffman prepared and sent an estimate to Niro. Defendant's estimate stated in relevant part:

Re: Rates for Hudson, WI to Bethlehem, PA

Thank you for including Robbins Motor Transportation in this opportunity to bid our services to you again! Below indicates the price for transportation with dims of:

Load # 1 Vessel 25'x15'x14.75 25,000 lbs. $16,887

Loading on the 18th of October and delivering on the 25th of October. The delivery date is subject to change due to permits and routing.

...STANDARD TERMS AND CONDITIONS

ESTIMATE IS BASED ON DIMENSION, WEIGHT, AND SERVICES SPECIFIED. CHANGES OR ERRORS IN THESE COULD AFFECT PRICING. RATE ESTIMATE VALID FOR 30 DAYS. WE FOLLOW THE FOLLOWING DETENTION RATES (PER HOURS OR FRACTION THEREOF) FLATBEDS $85.00/HOUR EXTENDABLE. DROPDECK OR LOWBED AT $100.00/PER HOUR DETENTION RATE ON SPECIALIZED EQUIPMENT WILL VARY DEPENDING UPON THE NUMBER OF AXELS. MODIFICATIONS TO EQUIPMENT NECESSARY TO TRANSPORT CARGO DUE TO UNUSUAL SHAPE OR SPECIAL HANDLING WILL BE AT SHIPPERS EXPENSE. COST CAN BE INCLUDED IN QUOTATION IF REQUIREMENTS ARE KNOWN IN ADVANCE.

Approval: _____

Mr. Thoen signed the estimate and faxed it back to defendant on October 14, 2004. Mr. Thoen and Mr. Kauffman never discussed the value of the drying chamber before the estimate was prepared. However, Mr. Kauffman testified at his deposition that "value really doesn't come into play" in preparing an estimate. Additionally, he testified he failed to advise Mr. Thoen that he could have his rate quotation based on either value or weight and dimensions. Finally, Mr. Thoen testified at his deposition that he never advised Mr. Kauffman before he prepared the estimate that if defendant failed to deliver the drying chamber by October 25, 2004 plaintiff would be subject to consequential damages.

On October 18, 2004 defendant arrived at Niro's facility in Hudson, Wisconsin and the drying chamber was loaded onto its trailer. Niro prepared a Bill of Lading for the shipment by completing the blanks on the form for: (1) load information; (2) identity of the carrier; (3) address of the consignee and shipper; (4) description of the dryer; and (5) weight of the dryer. Additionally, the Bill of Lading stated in relevant part:

Received, subject to the classifications and tariffs in effect on the date of this Bill of Lading:

...the property described below in apparent good order, ... It is mutually agreed, as to each carrier of all or any of said property over all or any of said portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions not prohibited by law, whether printed or written, herein contained (as specified in Appendix B to Part 1035) which are hereby agreed to by the shipper and accepted for himself and his assigns. ...Note—where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding-

$_____

per_____

Mr. Thoen signed the Bill of Lading on Niro's behalf. Defendant's driver signed it as well. However, Mr. Thoen failed to declare a value for the drying chamber on the Bill of Lading. The Bill of Lading was part of a multi-copy form Niro provided to defendant. Said Niro prepared form was the only documentation exchanged between the parties on October 18, 2004.

On or about October 28, 2004 the drying chamber was damaged while it was in transit on Interstate Highway 695 in Baltimore, Maryland. Accordingly, the drying chamber never arrived at plaintiff's facility in Bethlehem, Pennsylvania. The drying chamber was damaged when it struck an overpass and became dislodged from defendant's vehicle. It was inspected and declared a total loss. Accordingly, Niro manufactured a replacement drying chamber for plaintiff and invoiced it $233,100.00 in replacement costs. Additional facts relevant to the Court's analysis will be discussed throughout the course of this opinion.

## MEMORANDUM

Plaintiff argues it is entitled to partial summary judgment on three issues: (1) defendant's liability under the Carmack Amendment; (2) defendant's liability cannot be limited by released rate provisions contained within its tariff; and (3) plaintiff's entitlement to damages for repair costs. Defendant argues it is entitled to summary judgment on three issues as well: (1) its potential liability was effectively limited to $2,500.00 per ton because of limited liability provisions contained within its tariff and terms and conditions; (2) plaintiff is not entitled to special damages; and (3) plaintiff's common law claims of unjust enrichment and promissory estoppel are preempted by the Carmack Amendment.

■ As a preliminary matter, the Court has before it defendant's motion to strike plaintiff's reply brief and supporting affidavits because they were untimely filed. Defendant's motion is one of form over substance. Defendant was not prejudiced by plaintiff's minimal delay in filing its reply brief and supporting affidavits. Accordingly, defendant's motion to strike is denied. *See Glass v. Crimmins Transfer Co.*, 299 F.Supp.2d 878, 881 (C.D.Ill.2004).

■ Additionally, the Court has before it defendant's motion to strike the affidavit of Colin Barrett because plaintiff failed to previously disclose him as an expert witness. Defendant asserts it will suffer prejudice if plaintiff is allowed to use Mr. Barrett's testimony because it will have "little or no opportunity to depose Mr. Barrett, rebut his 'expert' opinions, nor challenge his credentials, as is [defendant's] right." Additionally, defendant asserts it will not have the opportunity to "solicit expert opinions of its own." Again,

defendant's motion is one of form over substance. Trial in this action is not set to begin until April 27, 2006 which gives defendant approximately three weeks to depose Mr. Barrett and to "solicit expert opinions" of its own. Accordingly, plaintiff's failure to previously disclose Mr. Barrett as an expert witness is harmless within the meaning of Federal Rule of Civil Procedure 37(c)(1) and defendant's motion to strike the affidavit of Colin Barrett is denied.

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over unnecessary or irrelevant facts will not preclude summary judgment. *Id.* Further, a factual issue is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Id.* A court's role in summary judgment is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

To determine whether there is a genuine issue of material fact for trial courts construe all facts in the light most favorable to the non-moving party. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir.2003) (citation omitted). Additionally, a court draws all reasonable inferences in favor of that party. *Id.* However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id.* at 283 (citations omitted).

## A. Defendant's liability under the Carmack Amendment

Plaintiff asserts uncontested facts in the record establish its prima facie case under the Carmack Amendment. Additionally, plaintiff asserts nothing in the record suggests that the drying chamber was damaged because of one of the excepted causes which would relieve defendant of liability. Accordingly, plaintiff argues it is entitled to summary judgment on the issue of defendant's liability under the Carmack Amendment. Defendant asserts plaintiff failed to meet its burden of establishing its prima facie case under the Carmack Amendment because it failed to demonstrate that the drying chamber arrived in damaged condition. Additionally, defendant asserts plaintiff failed to establish its amount of damages. Accordingly, defendant argues plaintiff's motion for summary judgment on the issue of liability should be denied.

The Carmack Amendment to the Interstate Commerce Act (hereinafter Carmack Amendment) states in relevant part:

A carrier providing transportation or service... shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States.... Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

49 U.S.C. § 14706(a)(1). The purpose of the Carmack Amendment is to "establish

uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment." *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir.1987).

Under the Carmack Amendment plaintiff bears the burden of establishing a prima facie case which requires it to demonstrate: (1) delivery to the carrier in good condition; (2) arrival in damaged condition; and (3) the amount of damages. *Miss. Pac. R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194 (1964), *reh'g. denied,* 377 U.S. 984, 84 S.Ct. 1880, 12 L.Ed.2d 752 (1964). Upon such a showing the burden shifts to the carrier to demonstrate both that it was free from negligence and that damage to the shipment was due to one of the excepted causes relieving it of liability. *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.,* 211 F.3d 367, 369 (7th Cir.2000) (*citing Id.* at 137–138, 84 S.Ct. 1142). The excepted causes are: (1) acts of God; (2) the public enemy; (3) acts of the shipper himself; (4) public authority; or (5) the inherent vice or nature of the goods. *Miss. Pac. R.R. Co.,* at 137, 84 S.Ct. at 1144 (citations omitted). If defendant cannot meet its burden plaintiff is entitled to recover damages for its actual loss or injury to the shipment.

Defendant concedes that it received the drying chamber in good condition. Accordingly, plaintiff's first element of its prima facie case is established. Defendant also concedes the drying chamber was damaged. However, defendant asserts plaintiff cannot establish the second element of its prima facie case because it cannot demonstrate that the drying chamber actually arrived at its final destination which was plaintiff's Bethlehem, Pennsylvania facility.

The purpose of demonstrating delivery to the carrier in good condition and arrival in damaged condition is to show an adverse change in the condition of goods while they were in the carrier's custody which implies that whatever injury occurred was caused by the carrier. *Camar Corp. v. Preston Trucking Co., Inc.,* 221 F.3d 271, 275 (1st Cir.2000) (*citing Id.* at 138, 84 S.Ct. 1142). Accordingly, carriers are subject to liability under the Carmack Amendment even if goods they were transporting never arrive at their final destination. *See Eddie Bauer, Inc. v. Focus Transp. Serv.,* 881 F.Supp. 1174, 1177–1181 (N.D.Ill.1995) (defendant carrier liable to plaintiff under the Carmack Amendment despite the fact that plaintiff's goods were stolen before final delivery) and *Hughes,* at 1411 (defendant carrier liable for loss incurred by plaintiff for household goods destroyed by fire while in transit).

It is undisputed that the drying chamber was damaged when it struck an overpass and became dislodged from defendant's vehicle. Additionally, it is undisputed that after the accident the drying chamber was inspected and declared a total loss. Accordingly, the fact that the drying chamber never arrived at plaintiff's facility is irrelevant because the record clearly demonstrates that there was an adverse change in the condition of the drying chamber while it was in defendant's custody.

An additional argument defendant asserts concerning plaintiff's second element of its prima facie case is that plaintiff cannot demonstrate it owned the drying chamber during transport. However, the contract plaintiff entered into with Niro establishes that it was the owner of the drying chamber when it was damaged. The contract provided that the terms of sale were F.O.B. points of manufacture in the U.S.A. According to the declaration of David Brand who serves as plaintiff's vice-president and general manager F.O.B.

points of manufacture means that the drying chamber became plaintiff's property once it was "placed on board the delivery truck at its point of manufacture in Hudson, Wisconsin."

Mr. Brand's assertion that plaintiff owned the drying chamber once it was loaded onto defendant's trailer is reinforced by the provision in the contract concerning risks of loss. Said section provided that plaintiff would bear the risk of loss of or damage to the equipment after delivery to the shipping point if delivery F.O.B. shipping point was specified. Here the shipping point and the manufacturing point were identical. Accordingly, the F.O.B. points of manufacture language contained within plaintiff's contract demonstrates that plaintiff bore the risk of loss once the drying chamber departed from Niro's Hudson, Wisconsin facility. There is no genuine issue concerning either ownership of the drying chamber or arrival of the drying chamber in damaged condition. Accordingly, plaintiff established the second element of its prima facie case.

■ Finally, defendant asserts plaintiff cannot meet its burden of establishing the third element of its prima facie case because it failed to demonstrate what "it is obligated to pay for the dryer." However, the declaration of Mr. Brand indicates that Niro invoiced plaintiff $233,100.00 for the replacement dryer. Accordingly, plaintiff established the third element of its prima facie case because its amount of damages is $233,100.00.

Plaintiff met its burden of establishing a prima facie case under the Carmack Amendment. Accordingly, the burden now shifts to defendant to prove that it was both free from negligence and that damage to the shipment was due to one of the excepted causes relieving it of liability. *Allied Tube & Conduit Corp.*, at 369 (citation omitted). Defendant concedes it failed to produce any evidence establishing that damage to the shipment was due to one of the accepted causes. Accordingly, plaintiff is entitled to summary judgment on the issue of defendant's liability under the Carmack Amendment.

## B. Limitation of defendant's liability under the Carmack Amendment and plaintiff's entitlement to repair costs

Defendant asserts it limited its liability to $32,500.00 because of limited liability provisions contained within its tariff and terms and conditions which serve to limit its liability to $2,500.00 per ton unless a shipper declares a higher value. Accordingly, because Niro failed to declare a value for the drying chamber on the Bill of Lading defendant argues it is entitled to summary judgment limiting is liability to $32,500.00. Plaintiff asserts defendant failed to provide Niro with notice of its released rate valuation or provide it with an opportunity to choose between two different levels of liability. Additionally, plaintiff asserts defendant's tariff is void as a matter of law. Accordingly, plaintiff argues it is entitled to summary judgment concerning the non-limitation of defendant's liability which would entitle it to damages for repair costs in the amount of $233,100.00.

■ An exception to the general rule that a carrier is liable for the actual loss or injury to property exists pursuant to 49 U.S.C. § 14706(c)(1)(A). Said statute provides in relevant part:

> ...a carrier...may...establish rates for the transportation of property...under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.

Said written agreement between a carrier and a shipper may incorporate a limitation of liability contained within a tariff. *Nieman Marcus Group, Inc. v. Quast Transfer, Inc.*, 1999 WL 436589, at *3 (N.D.Ill. June 21, 1999).

Under the prior statutory scheme four requirements had to be met by a carrier to limit its liability under the Carmack Amendment. A carrier had to: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Hughes*, at 1415 (*citing Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103 (1st Cir.1978)).

■ However, the Interstate Commerce Commission (hereinafter ICC) no longer exists. Additionally, carriers are no longer required to file tariffs with the ICC's successor the Surface Transportation Board. *Nieman Marcus Group, Inc.*, at *3. Accordingly, element number one can no longer be a requirement for applying a liability limitation. *Id.* However, a liability limitation provision contained within a tariff does not automatically limit a carrier's liability because today tariffs have no binding effect apart from their status as contracts. *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1030 (7th Cir.2000). Accordingly, a carrier must upon the shipper's request provide it with "a written or electronic copy of the rate, classification, rules, and practices [such as a tariff] upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier is based." 49 U.S.C. § 14706(c)(1)(B).

Plaintiff asserts defendant cannot limit its liability under the Carmack Amendment based on provisions contained within its tariff because its tariff is entirely void

by operation of law. A carrier is no longer required to file a tariff with the Surface Transportation Board. *Nieman Marcus Group, Inc.*, at *3. Accordingly, tariffs are no longer automatically binding upon a shipper. *See Tempel Steel Corp.*, at 1030. However, as previously indicated a carrier's liability can be effectively limited based on a liability limitation provision contained within a tariff if said tariff is part of an enforceable contract between the parties. *Id.* Accordingly, the fact that defendant's tariff is not automatically applicable is not dispositive of the matter because the Court must still determine what documents served as enforceable contracts between Niro; defendant; and plaintiff as Niro's assign.

■ First, the Court concludes defendant's October 14, 2004 estimate served as an enforceable contact between the parties. The estimate contained all required contract elements: (1) offer; (2) acceptance; and (3) consideration. *See Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996). However, that does not end the Court's inquiry because a subsequently issued Bill of Lading can also serve as an enforceable contract. *See Schneider Nat'l. Carriers, Inc. v. Rudolph Express Co., Inc.*, 855 F.Supp. 270, 273–274 (E.D.Wis. 1994). Accordingly, if the Bill of Lading served as an enforceable contract the parties' motions for summary judgment are ones of contract interpretation. When a motion for summary judgment concerns contract interpretation summary judgment is only proper if the contract "is clear and unambiguous as a matter of law, meaning that [it] can be read only one way." *Penske Logistics, Inc. v. KLLM, Inc.*, 285 F.Supp.2d 468, 472 (D.N.J.2003) (*citing Starr v. Katz*, 1994 WL 548209, at *7 (D.N.J. Oct. 5, 1994)). The Court concludes the Bill of Lading served as an enforceable contract between Niro and de-

fendant. Accordingly, elements two and four of the *Hughes* test were established when: (1) Niro prepared its Bill of Lading; and (2) Mr. Thoen and defendant's driver signed the Bill of Lading. However, summary judgment is not proper because the contract is ambiguous concerning the issue of whether defendant gave Niro a reasonable opportunity to choose between two or more levels of liability.

The Bill of Lading contained the language "[r]eceived, subject to the classifications and tariffs in effect on the date of this Bill of Lading." Defendant's tariff provides in relevant part:

*ITEM 161—APPLICATION OF RATES VALUATION—CARRIER'S LIABILITY*

When a shipper tenders a shipment and declares a value in excess of $2,500.00 per ton...such shipment will only be accepted subject to the base valuation rate of one dollar...for each one thousand dollars...of fraction thereof of the declared value.

The shipper must make and sign the following notation of the Bill of Lading: "The agreed or declared value of the property on the Bill of Lading is hereby specifically stated by the shipper to be $_____ per 2,000 pounds. SIGNED:
_____."

Unless a greater value is declared by the shipper and stated on the Bill of Lading the carrier's liability for any loss or damage to any article or package comprising the shipment shall be limited to $2,500.00 per ton...or fraction thereof.

The language contained in Item 161 of defendant's tariff was incorporated into paragraph 18 of defendant's terms and conditions entitled Limited Liability. The Bill of Lading also contained the language "where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property."

It is undisputed that Niro failed to advise Mr. Kauffman of the value of the drying chamber before he prepared the estimate. Additionally, it is undisputed that Niro failed to declare a value for its shipment on the Bill of Lading. Accordingly, at first glance it appears defendant's liability was effectively limited by its tariff which was incorporated into the shipper prepared Bill of Lading. However, there remains a genuine issue concerning whether Niro's rate was dependent on value.

Mr. Kauffman testified that value does not come into play when rates are determined. He indicated dimensions are what is important. Additionally, Mr. Kauffman testified that he uses defendant's computer tariff system when he prepares a quote which takes into account: (1) the pickup point; (2) the delivery point; (3) weight; (4) size; and (5) dimension. Value of an item apparently is not taken into account by defendant's computer tariff system. Further, Mr. Kauffman testified that he has never used defendant's paper tariff (including Item 161) in preparing an estimate. Additionally, his office does not maintain a copy of defendant's paper tariff. Finally, Mr. Kauffman testified he: (1) failed to advise Mr. Thoen that he could have his rate quotation based on either value or weight and dimension; and (2) is not sure whether Niro was provided defendant's terms and conditions. Although it is undisputed that Mr. Thoen failed to request a copy of either defendant's tariff or terms and conditions.

Accordingly, there remains a genuine issue of material fact concerning the issue of whether defendant provided Niro with a reasonable opportunity to choose between two different levels of liability. If the jury finds in the affirmative plaintiff's damages will be limited to $32,500.00. However, if

the jury answers in the negative defendant will be subject to liability for the full value of plaintiff's actual loss.

### C. Plaintiff's entitlement to special damages

██ Defendant asserts it is entitled to summary judgment on the issue of special damages because it never received notice of any circumstances which would give rise to plaintiff's special damages. Plaintiff asserts its change order and additional general contracting costs were natural and probable consequences of defendant's breach. Accordingly, plaintiff argues defendant's motion for summary judgment concerning the issue of special damages should be denied.

██ The Carmack Amendment is comprehensive enough to "embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Se. Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1936) (internal quotation marks and citation omitted). Accordingly, an injured party can recover damages for delay, non-speculative lost profits and all reasonably foreseeable consequential damages. *Mach Mold Inc. v. Clover Assoc., Inc.*, 383 F.Supp.2d 1015, 1032 (N.D.Ill.2005) (citations omitted).

██ However, the Carmack Amendment has not changed the common law rule that special damages are usually not recoverable in a breach of contract action. *Id.* at 1032–1033 (citation omitted). Special damages are those that a carrier would not reasonably foresee as the ordinary consequence of a breach at the time the contract was made. *Id.* at 1033 (citations omitted). To recover special damages plaintiff must show that defendant had notice of circumstances which might lead to such damages. *John Morrell & Co. v. Burlington N., Inc.*, 560 F.2d 277, 281 (7th Cir.1977) (citations omitted). Ad-

ditionally, under the general rule notice of special damages must be given when the shipping contract is made. *Mach Mold Inc.*, at 1033 (*citing F.J. McCarty v. S. Pac. Co.*, 428 F.2d 690, 693 (9th Cir.1970)). Plaintiff cannot meet its burden of demonstrating that at the time the initial contract was made defendant had notice of circumstances which would lead to special damages. Accordingly, defendant is entitled to summary judgment on this issue.

Mr. Thoen testified at his deposition as follows:

Q Prior to October 18, 2004 did you have any knowledge what specifically [plaintiff] was going to use the dryer for?

A No, I have no idea. Other than it's a dryer.

Q Did you have any idea what was going on at [plaintiff's] facilities in Bethlehem, Pennsylvania?

A No. I had no contact with them at all. I worked strictly through Joe Mally.

Q ...He told you the delivery date he needed it by?

A That's correct.

Q Did he tell you the specifics of why he needed it by that date?

A No, he did not.

Q So did you request a specific delivery date from Robbie Kauffman at [defendant]?

A Yes, I did.

Q ...Did you say anything to Robbie Kauffman or anyone else at [defendant] regarding what had happened if [plaintiff] didn't receive the dryer by the delivery date?

A. No.

Q. ...Did you tell [defendant] anything about time being of the essence or consequential damages?

### A. I did not know of any. . . .

It is undisputed that the only contact between Niro and defendant occurred between Mr. Thoen and Mr. Kauffman. Accordingly, defendant was unaware when it entered into the initial transportation contract with Niro that plaintiff's facility in Bethlehem, Pennsylvania was under construction and failure to deliver the drying chamber by October 25, 2004 would subject plaintiff to additional general contracting or change order costs. Additionally, defendant clearly indicated on its estimate that delivery date was subject to change due to permits and routing.

Plaintiff asserts that it was "obvious to [defendant] that Niro was shipping a unique, one-of-a-kind object that was part of a larger system being assembled at [plaintiff's] facility." However, plaintiff cannot rest on conclusory allegations alone and successfully defeat a motion for summary judgment. The undisputed evidence in the record establishes that defendant did not have the prerequisite notice at the time it entered into the initial contract with Niro that failure to deliver the drying chamber by October 25, 2004 would subject plaintiff to special damages. Accordingly, plaintiff cannot seek recovery for its change order or additional general contracting costs in the form of special damages under its Carmack Amendment claim. Defendant's motion for summary judgment on the issue of special damages is granted.

### D. Preemption of plaintiff's common law claims under the Carmack Amendment.

██ Defendant asserts that plaintiff's common law claims for unjust enrichment and promissory estoppel must be dismissed as a matter of law because they are preempted by the Carmack Amendment. Plaintiff concedes that this action is governed exclusively by the Carmack Amendment. Accordingly, defendant's motion for summary judgment on the issue of pre-emption is granted and count two of plaintiff's complaint is dismissed.

The Court's role on summary judgment is not to weigh the evidence and determine the truth of the matter. Accordingly, trial in this action will focus on the issue of whether defendant provided Niro with a reasonable opportunity to choose between two different levels of liability. Both the October 14, 2004 estimate and the Bill of Lading served as enforceable contracts. The October 14, 2004 estimate does not contain a term or condition limiting defendant's liability. However, the Bill of Lading limits defendant's liability by incorporating its tariff. Accordingly, when the two documents are viewed together as a whole the Court concludes the contract is ambiguous and its interpretation must be reserved for the fact finder.

### ORDER

IT IS ORDERED that defendant's motions to strike: (1) plaintiff's reply briefs and supporting affidavits; and (2) the affidavit of Colin Barrett are DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment concerning defendant's liability under the Carmack Amendment is GRANTED and in all other respects DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment concerning: (1) the inapplicability of special damages; and (2) preemption of plaintiff's common law claims under the Carmack Amendment is GRANTED and in all other respects DENIED.

IT IS FURTHER ORDERED that Count Two of plaintiff's complaint is DISMISSED.