# In the
# United States Court of Appeals
## For the Seventh Circuit

—————

No. 02-4110

CLETA HEFT,

*Plaintiff-Appellant,*

v.

CODY MOORE, CARL CARPENTER, ED ROOT,
JEFF MCCLAIN, and RIC HUGHES,

*Defendants-Appellees.*

—————

Appeal from the United States District Court
for the Central District of Illinois.
No. 01 C 2131—**David G. Bernthal**, *Magistrate Judge.*

—————

ARGUED NOVEMBER 5, 2003—DECIDED NOVEMBER 26, 2003

—————

Before FLAUM, *Chief Judge*, and BAUER and WILLIAMS, *Circuit Judges.*

FLAUM, *Chief Judge.* Cleta Heft filed suit against police officers who searched her home alleging that the officers violated her civil rights by injuring her, causing unreasonable property damage to her home, and planting evidence. The district court granted summary judgment in favor of the defendants accused of causing unreasonable property damage and planting evidence. After Heft presented all of her evidence at trial regarding injuries caused by the search, the district court granted the sole remaining defendant a directed verdict. Heft now appeals the district

court's order of summary judgment and the directed verdict. For the reasons stated herein, we affirm.

## I. BACKGROUND

On the evening of October 21, 1999, officers from the Illinois State Police and Decatur Police Department executed a valid search warrant at Cleta Heft's home. Sergeant Kilby was in charge at the scene and the ranking officer. Defendants Carl Carpenter, Ed Root, Jeff McClain, Ric Hughes, and Cody Moore were officers present when the warrant was executed.

According to Heft, she was at home watching television when she heard a noise at the front door. She started walking towards the door and was two or three feet away when police officers used a battering ram to gain entry. Heft heard shouts telling her to get down. Heft claims that as she turned to lay down, she was hit in the lower back and was knocked to the floor. Simultaneously, she heard a loud explosion from the flash-bang device which the officers had thrown into her home. At some point during this sequence, Heft suffered injury to her knee and hand and a large bruise on her back.

The officer who struck Heft's door open with the battering ram was Defendant Moore. As the door opened, he saw the door hit Heft in the upper body and face. Officer Mullins also saw Heft struck in the face by the door, and then saw her fall backwards. Officers Coventry and Squires were the first two officers to enter Heft's home. Officers Moore and Mullins then entered the home, followed by Officers Bell, McClain, Kilby, Carpenter, and Hughes. When the officers entered the home, Heft was on the floor. All of the officers deny striking Heft or seeing her struck by another officer. Heft cannot identify who or what struck her, but she does state that she was not struck by the door.

Defendants Root, Hughes, McClain, and Carpenter all testified that when they entered Heft's home it was cluttered and disorderly. It was so messy that the officers believed it would be difficult to move around and search. Heft claims that her home was in a "state of devastation" immediately after the search, but provides no evidence regarding the condition of her home prior to the search.

During the search of Heft's home, Carpenter found a metal box containing drugs and drug paraphernalia in the front bedroom. When she was asked about it, Heft stated she was not aware it was there and knew nothing about it. Heft's son, who lived in her front bedroom until 1997 and still had many belongings there, also denied knowledge of the contraband. Heft's son still had a key to the home, as did Heft's sister who sometimes stayed in the front bedroom overnight. Heft's second son visited Heft approximately once a month and also had access to the front bedroom. At her deposition, Heft stated that it was possible that the box belonged to one of her sons. Criminal charges were never brought against Heft based on the contents of the box.

## II. DISCUSSION

On appeal, Heft argues that the district court erred by: (1) granting summary judgment to Defendants Root, Hughes, and McClain on the issue of whether they used excessive violence in searching Heft's home; (2) granting summary judgment to Defendant Carpenter on the issue of whether he planted contraband in Heft's home; (3) granting Defendant Moore's motion in limine excluding Heft's evidence that the police searched the wrong house and planted contraband at her house; and (4) granting Defendant Moore a directed verdict on the issue of whether he injured Heft during the search.

*A.  Jurisdiction*

As a preliminary matter we must address this Court's jurisdiction. In this case, Magistrate Judge Bernthal granted Heft's motion to dismiss various defendants before Heft and all of the defendants had consented to proceed before a magistrate judge. Some of the dismissed defendants later filed written consent to proceed before the magistrate, while others never filed written consent but simply abandoned the case once they were dismissed. If the magistrate's dismissals were invalid due to a lack of authority, those defendants would remain parties to the case and we would lack jurisdiction because there would be no final order as to all defendants as is required by 28 U.S.C. § 1291 and Federal Rule of Civil Procedure 54(b).

The Federal Magistrate Act of 1979 authorized magistrate judges to conduct "any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case," as long as the magistrates are "specially designated . . . by the district court" and are acting "[u]pon consent of the parties." 28 U.S.C. § 636(c)(1). Although 28 U.S.C. § 636(c)(2) and Federal Rule of Civil Procedure 73(b) provide the method for gaining formal consent from the parties, the Supreme Court has recently held that consent also "can be inferred from a party's conduct during litigation." *See Roell v. Withrow*, 123 S. Ct. 1696, 1699 (2003). The Court further held that as long as the parties have voluntarily consented, the magistrate has full civil jurisdiction under § 636(c)(1) even if the technical requirements of § 636(c)(2) and Federal Rule of Civil Procedure 73(b) are not met. *See id.* at 1702.

Here, all of the current parties to the litigation voluntarily consented to proceed before a magistrate judge. Both the plaintiff and defendants entered general appearances before the magistrate and participated in hearings before the magistrate. As for the dismissed defendants, all but

three signed formal written consent after their dismissals. Prior to the written consent, these defendants evidenced their voluntary consent by participating in proceedings before the magistrate. Therefore, these defendants properly consented to the magistrate's jurisdiction and were appropriately dismissed.

This leaves three dismissed defendants who did not appear or otherwise consent to proceed before a magistrate. However, they are effectively no longer parties to this litigation because the plaintiff voluntarily dismissed all claims against them and then abandoned pursuing those claims. This case is analogous to *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 667 (7th Cir. 1986), in which this Court held that an order that effectively ends the litigation on the merits is appealable as a final order even if the lower court did not formally enter judgment on a separate claim if that separate claim was abandoned. Heft has long abandoned her claims against these defendants, and this Court therefore has jurisdiction over the appeal.

### B. Property Destruction

Heft first challenges the district court's grant of summary judgment to Defendants Root, Hughes, and McClain, who Heft accused of destroying her personal property. It is true that the Fourth and Fourteenth Amendments provide a remedy when a citizen's property is unreasonably damaged during a search. *See United States v. Ramirez*, 523 U.S. 65, 71 (1998) (holding that the "general touchstone of reasonableness which governs Fourth Amendment analysis, governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.") (citations omitted); *see also Daniels*

*v. Southfort*, 6 F.3d 482, 486 (7th Cir. 1993). However, in this case Heft failed to show that her property was damaged at all, and thus the grant of summary judgment was proper.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Even construing all of the facts in the light most favorable to Heft, however, there is no genuine issue of material fact. The entirety of evidence presented by Heft in support of her claim that the defendants used unreasonable force in the search of her home was her allegation that her home was in a state of devastation immediately after the police raid. While the defendants agreed that they moved several items that belonged to Heft during the course of the search, they also alleged that her house was cluttered and disorderly prior to the search. Heft provided no evidence regarding the pre-search condition of her home or any specific evidence that any property item was damaged. In other words, Heft failed to provide evidence that the police harmed her property at all, let alone provide evidence that the police harmed her property unreasonably.[1] For that reason, the

---

[1] In further support of her appeal, Heft cites to her own affidavit which offers slightly more evidence in support of her claim of
(continued...)

district court properly granted summary judgment in favor of Officers Root, Hughes, and McClain.

### C. Planted Evidence

Similarly, Heft has offered no affirmative evidence that Officer Carpenter planted evidence during the search. Although we must draw all reasonable inferences in favor of Heft, summary judgment is proper when the plaintiff's case consists of factually unsupported claims. Additionally, when the defendant presents evidence in his favor, the plaintiff cannot rest on the pleadings but must set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Specific "facts" require more than just speculation or conclusory statements. *See Hall v. Bodine Elec.*, 276 F.3d 345, 354 (7th Cir. 2002); *Abrams v. Walker*, 307 F.3d 650, 657 (7th Cir. 2002).

Heft's response to the defendants' motion for summary judgment was completely devoid of specific facts showing

---

[1] (...continued)

unreasonable police behavior. Specifically, the affidavit claims that the police "destroyed various personal property and threw numerous items all over the home." Although Heft's recollection of events was available at the time of summary judgment, this affidavit was not submitted until after the district court granted the defendants' motion for summary judgment when Heft filed a motion to reconsider. In order for a court to consider new evidence in a motion to reconsider, the movant must show that the evidence "could not, through the exercise of due diligence," have been presented to the district court before the summary judgment decision was made. *See Rothwell Cotton Co. v. Rosenthal*, 827 F.2d 246, 251 (7th Cir. 1987). Heft has provided no arguments regarding why this affidavit constitutes new evidence, and has not challenged the district court's refusal to accept this new evidence. We therefore decline to consider Heft's untimely affidavit.

that Carpenter planted the drugs found in Heft's home. The entirety of Heft's evidence against Carpenter was that he had motive to plant the drugs because he was the officer in charge of the raid, and that he had the means and opportunity to plant the drugs because he was a narcotics officer who found the contraband. Heft argues that because she and her son deny having knowledge of the drugs, that leaves only Carpenter as the source of the drugs. This "evidence" was unsupported by record citations or analogous cases and defies both the facts of this case and common sense. First of all, there is no evidence that Carpenter was in charge of the raid. The ranking officer in charge at the scene was Sergeant Kilby. But even if Carpenter was in charge at the scene of the search, no reasonable inference could be drawn that he would therefore have motive to plant evidence. Second, Heft's deduction via process of elimination that Carpenter planted the drugs because Heft and her son deny knowledge of them is clearly flawed. Both Heft's sister and Heft's second son also had access to the front bedroom. Furthermore, Heft only stated that she did not know that the box with the drugs was in the front bedroom—she never denied that it could have been there prior to the search. Finally, Heft admitted in her deposition that her son could have left the box in the front bedroom. The bare conclusion that Carpenter planted the contraband is therefore unsupported and the district court properly granted Officer Carpenter summary judgment.

### D. Evidentiary Rulings

Once Carpenter, Root, Hughes and McClain were granted summary judgment, the case proceeded to trial on the issue of whether Officer Moore used unreasonable force against Heft. Heft contends that she should have been allowed to present evidence at trial that drugs were found at her home and that Carpenter planted the drugs. Heft also argues that

she should have been able to present evidence that the police searched the wrong house on October 21, 1999. The district court disagreed and excluded this evidence in a motion in limine, which Heft now appeals.

We review district court's rulings on motions in limine for an abuse of discretion. *See Binks Mfg. Co. v. National Presto Industries*, 709 F.2d 1109, 1115 (7th Cir. 1983). Our role is limited as "decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court." *See Ellis v. City of Chicago*, 667 F.2d 606, 611 (7th Cir. 1981). Using these standards, we agree that the exclusion was proper under Federal Rule of Evidence 403.[2]

The sole issue at trial was whether Defendant Moore struck Heft with a battering ram. Heft's groundless suppositions that another officer at the house planted drugs had little probative value (if any probative value at all) to the issue of Heft's injuries, and created the substantial risk of confusion of the issues at trial. Similarly, Heft's belief that the officers were searching the wrong house also had little or no probative value in light of the fact that the validity of the warrant was uncontested. Furthermore, the issue increased the probability of confusion of the issues at trial. We therefore affirm the district court's exclusion of the evidence.

### E. Directed Verdict

After Heft presented all of her evidence against Officer Moore, the district court granted a directed verdict in

---

[2] Federal Rule of Evidence 403 states that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Moore's favor. Heft now appeals, arguing that the directed verdict was improper. We disagree.

Heft admits that no one, including Heft, saw Moore strike Heft. However, Heft still contends that Moore was the only one who could have given Heft the bruise on her back because she was hit at the exact moment the flash-bang device went off. Heft theorizes that immediately after Moore used the battering ram to open the door, he waited until the flash-bang device was thrown into the house, and then used the two-second gap before the device went off to "jump[ ] through the door off to the side, away from the diversionary device, and [strike] the plaintiff as she turned to run from the front door. He easily could have then stepped back out 2 or 3 feet."

To avoid a directed verdict, the plaintiff must do more than argue that the jury might have disbelieved all of the defendant's witnesses. Rather, the plaintiff must offer substantial affirmative evidence to support her argument. *See Perfetti v. First Nat'l Bank*, 950 F.2d 449, 456 (7th Cir. 1991). A directed verdict should be granted in favor of the defendant "if the evidence on which [the plaintiff] relies is in irreconcilable conflict with immutable laws of physics or is wholly inconsistent with established and uncontroverted physical facts." Wright & Miller, *Federal Practice and Procedure* § 2527 (1971).

In this case, Heft offered no affirmative evidence to show that Moore was responsible for the bruise on her back. Considering that there were approximately six other police officers at the scene, all waiting to storm into the house once the door was opened, it is implausible to conclude that Moore was able to jump three feet into the house after the door was opened, strike Heft, and then jump back out, without any of the other officers seeing him. This is especially true since it is undisputed that the officer who threw the flash-bang device into the home was standing

in front of Moore during this time period. Moreover, all of the officers agree that Moore was the third or fourth officer to enter the house, and not the first. Furthermore, Heft's testimony contradicts her own theory. She testifies that she was hit at the exact same time that the flash-bang device went off. Yet it is uncontested that there were no officers in the house when the device exploded.

Heft offers no case law in support of her claim that the district court improperly granted the defendant a directed verdict. The failure to cite cases in support of an argument waives the issue on appeal, despite counsel's contentions at oral argument that case law is unnecessary "window dressing." *See* Fed. R. App. P. 28(a)(9)(A); *United States v. Mason*, 974 F.2d 897, 901 (7th Cir. 1992) (failure to cite case law in support of argument waives appellate review); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 786 (7th Cir. 2000). But even if we were to reach the merits, it is clear that Heft offered no evidence to support her claim that Moore injured her back. Heft's unsupported theory is not enough to avoid a directed verdict, and we therefore affirm.

### III. CONCLUSION

The decisions of the district court are AFFIRMED.

A true Copy:

      Teste:

                  _____
                  *Clerk of the United States Court of*
                  *Appeals for the Seventh Circuit*