## Rifaat GERGES and Sahar Gamal Hanna, Petitioners,

v.

## John ASHCROFT, Attorney General of the United States, Respondent.

No. 03–1670.

United States Court of Appeals, Seventh Circuit.

---

Submitted June 24, 2004.*

Decided July 1, 2004.

Robert W. DeKelaita, Lincolnwood, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, John C. Cunningham, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

## ORDER

### I. Background

Rifaat Gerges, a native citizen of Egypt, entered the United States in July 1998 as a nonimmigrant visitor for pleasure. His temporary visa expired in January 1999, but instead of returning to Egypt Gerges filed an application for asylum and requested relief under Article 3 of the United Nations Convention Against Torture. In his application, Gerges claimed that Islamic fundamentalists in Egypt had persecuted him for his religious beliefs as a Coptic Christian. In response, the former Immigration and Naturalization Service commenced removal proceedings against Gerges for overstaying his visa and scheduled a hearing on his application for asylum before an immigration judge ("IJ"). Gerges's wife was added as a derivative beneficiary of Gerges's application.[1]

Gerges's testimony before the IJ revolved around two central allegations of past persecution. First, Gerges testified that Muslim fundamentalists began harassing him after he opened a private medical clinic in 1995. The fundamentalists

---

* After examining the briefs and record, we conclude that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a)(2).

1. Gerges's counsel inadvertently omitted Gerges's wife, Sahar Gamal Hanna, from the caption of his petition for review. He attempted to correct this problem by filing a motion to add Hanna as a party. The government opposed the request, and the motion was ordered taken with the case. As Hanna seeks derivative status and was actually named in the application for asylum, we hereby grant the motion. See Miljkovic v. Ashcroft, 366 F.3d 580, 582–84 (7th Cir.2004); Bace v. Ashcroft, 352 F.3d 1133, 1137 (7th Cir.2003).

allegedly broke furniture and equipment in the clinic and threatened patients for allowing a Christian to treat them. Gerges also claimed that the fundamentalists forced him to pay a monthly fee to avoid further harassment and violence. Gerges testified that he reported this constant harassment to the police, but the police told him that they could not protect him. Finally, in December 1997, Gerges's clinic burned to the ground. Gerges testified that the same group of Islamic extremists started the fire, but the fire investigators reported that the cause was electrical in nature.

Gerges based his second allegation of persecution on events that occurred after he found a job at Sohag General Hospital in January 1998. According to Gerges, the hospital was "a hotbed of Muslim fanaticism" led by the director of the hospital, Dr. Ahmed Abutaleb. Gerges testified that Abutaleb discriminated against him by assigning him the worst shifts, and that Abutaleb warned Gerges not to touch Muslim female patients. These problems allegedly escalated when Gerges asked Abutaleb for two weeks of vacation time so that he could get married. When Abutaleb refused this request, Gerges testified that he took sick time, claiming to be ill. Upon returning from vacation, Gerges was warned by a friend that Abutaleb was angry and was intent on "teaching him a lesson." During an evening shift on the day that he returned to the hospital, Gerges was approached by a female nurse who quickly began to undress before screaming for help. According to Gerges, the nurse yelled, "This Christian doctor wanted to sexually harass me and assault me." Gerges testified that he then jumped out an open window and ran from the hospital. After learning that Abutaleb had reported the incident to the police and that the nurse's family wanted him to convert to

Islam and marry her, he fled from Sohag to Cairo with his wife.

After hearing Gerges's testimony, the IJ denied his application for asylum. The IJ stated that, although Gerges's claim had a credible basis due to the discrimination that many Coptic Christians have experienced as a religious minority in Egypt, Gerges's testimony should be given little weight due to several discrepancies. The IJ noted that investigators found the cause of the fire at Gerges's clinic to be an electrical problem, but Gerges testified that fundamentalists set the fire. The IJ also questioned Gerges's assertion that fundamentalists dominated the hospital, because Gerges was able to obtain employment there. Next, the IJ found that there was little support for Gerges's belief that Abutaleb conspired to have him arrested under a false charge of sexual assault because there was no evidence connecting the nurse who made the charge with Abutaleb. In addition, Gerges told the asylum officer at his interview that Abutaleb had never tried to get him arrested. Given these inconsistencies, the IJ found no basis to conclude that Gerges had been subject to past persecution or would be subject to future persecution in Egypt if returned. The Board of Immigration Appeals ("BIA") affirmed, adopting the IJ's conclusions and further holding that Gerges failed to demonstrate that he would be unable to relocate to another area in Egypt to avoid encounters with Abutaleb or Muslim fanatics. To the extent that the BIA adopted the IJ's decision, we review the analysis of the IJ. See Toptchev v. INS, 295 F.3d 714, 720–21 (7th Cir.2002).

## II. ANALYSIS

Before proceeding to the merits of the petitioner's appeal, we note that the petitioner's opening brief comes perilously close to failing to comply with several of

the rules of this court, including Federal Rule of Appellate Procedure 28(a)(9)(A). The brief contains a mere two paragraphs of facts, a one-sentence argument summary that simply quotes the standard of review on appeal, and an argument section that is almost entirely devoid of citations to case law or other precedential authority. *Cf. Heft v. Moore*, 351 F.3d 278, 285 (7th Cir.2003) (holding that appellant's failure to cite cases in support of an argument waives issue on appeal). Counsel for the petitioner is currently the subject of disciplinary proceedings before this court due to his continuous pattern of dilatory conduct, and the woeful inadequacy of this brief will be considered in determining the appropriate sanction. However, we believe it unnecessary to dismiss the appeal on this basis because the petitioner's arguments are meritless.

Gerges foregoes any argument in his brief about the destruction of his clinic in 1997. Instead he argues that the IJ erred in denying him asylum because the IJ found that his testimony was credible, and his credible testimony about the sexual assault allegation justified a finding of past persecution. However, Gerges's understanding of the IJ's credibility determination directly conflicts with the IJ's opinion, in which the IJ expressly stated that Gerges's testimony "should be given little weight" due to several material inconsistencies. It is true that the IJ found a credible theoretical basis for Gerges's claim because Coptic Christians have faced persecution in Egypt, *see* U.S. DEPARTMENT OF STATE, EGYPT COUNTRY REPORT ON HUMAN RIGHTS PRACTICES FOR 1998, but the fact that other Coptic Christians have been persecuted does not preclude the possibility that Gerges falsified his own claim. Because Gerges does not challenge the IJ's credibility findings, we have no basis to overturn the IJ's denial of his application for asylum. *Krouchevski v. Ashcroft*, 344

F.3d 670, 673 (7th Cir.2003); *Oforji v. Ashcroft*, 354 F.3d 609, 614 (7th Cir.2003).

However, even if we were to assume that Gerges's testimony was credible, the mere fact that Abutaleb pursued a religious vendetta against him does not establish a basis for asylum unless there is some connection between Abutaleb's actions and the Egyptian government. *See Meghani v. INS*, 236 F.3d 843, 847 (7th Cir.2001) ("Finding persecution ordinarily requires a determination that government authorities, if they did not actually perpetrate or incite the persecution, condoned it or at least demonstrated a complete helplessness to protect the victim."); *Roman v. INS*, 233 F.3d 1027, 1035 (7th Cir.2000) (holding that persecution of employee by management of government-owned airline does not constitute persecution because the connection between the government and management is unclear); *Nenadovic v. INS*, 108 F.3d 124, 129 (7th Cir.1997) (holding that threats made by manager at petitioner's plant do not establish a basis for asylum because manager had no clear connection to the government). Gerges does not allege that the Egyptian government was involved in staging the false allegation of sexual assault, nor does he claim that he reported the falsity of the accusation to the police, or that the Egyptian authorities were unable to help him. Because the sexual assault allegation is the only evidence of persecution that Gerges presents on appeal, we are unable to discern a viable argument to support overturning the IJ's decision. Similarly, Gerges's conclusory argument that the BIA erred in summarily adopting the reasoning of the IJ is without merit. *See, e.g., Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir.2003); *Mousa v. INS*, 223 F.3d 425, 428, 430 (7th Cir.2000); *Dobrican v. INS*, 77 F.3d 164, 167 (7th Cir.1996).

Accordingly, we AFFIRM the decision of the IJ denying Gerges's application for asylum.