**MARITIME–ONTARIO FREIGHT LINES, LTD., Plaintiff,**

**v.**

**STI HOLDINGS, INC., Stoughton Trailers, Inc. and Stoughton Trailers, LLC, Defendants.**

No. 06–C–627–S.

United States District Court, W.D. Wisconsin.

April 3, 2007.

Ian A.J. Pitz, Michael Best & Friedrich, LLP, Madison, WI, for Defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Maritime–Ontario Freight Lines, Ltd. commenced this product liability action against defendants STI Holdings, Inc., Stoughton Trailers, Inc. and Stoughton Trailers, LLC seeking monetary relief. Jurisdiction is based on 28 U.S.C. § 1332(a)(2). The matter is presently before the Court on defendants' motions for summary judgment. The following facts are either undisputed or those most favorable to plaintiff.

## BACKGROUND

Plaintiff Maritime–Ontario Freight Lines, Ltd. is a Canadian corporation with its principal place of business in Brampton, Ontario. Defendant STI Holdings, Inc. (formally known as Stoughton Trailers, Inc.) is a Wisconsin corporation with its principal place of business in Stoughton, Wisconsin. Defendant Stoughton Trailers, LLC is a Wisconsin limited liability compa-

ny with its principal place of business likewise in Stoughton, Wisconsin.

On May 30, 2002, plaintiff and defendant Stoughton Trailers, Inc. (hereinafter defendant Stoughton) entered into an agreement for the sale of 200 53′ domestic intermodal shipping containers. Specifically, the agreement called for the sale of 100 53′ Heater Containers and 100 53′ Reefer Containers. Additionally, the agreement contained detailed product design specifications and it incorporated industry standards known as the AAR Specifications.[1]

The parties included a limited warranty provision in the terms of the agreement. Said provision provides in relevant part as follows:

> **LIMITED WARRANTY. Seller warrants to the original Buyer for five (5) years from the date of manufacture that the Goods will be free of defects in material and workmanship, when used for the purpose for which the Goods were designed and when the Goods have been properly maintained. "USED AS DESIGNED" means the proper loading, carriage of properly secured, uniformly distributed legal loads of noncorrosive cargo, being operated on well maintained public roads. At no time shall the Goods be loaded so as to exceed the gross vehicle weight rating (GVWR) or gross axle weight rating (GAWR) stamped on the vehicle registration plate affixed to the Goods by Seller.**
>
> ... Buyer and Manufacturer further agree that Buyer's sole remedy for any defects in new goods delivered hereunder, whether Buyer's claim arises under the warranty set forth above, or otherwise, shall be limited to the repair or replacement at Manufacturer's option within the warranty period ...

> **THIS WARRANTY, TO THE FIRST PURCHASER FROM THE SELLER (OR ITS DULY AUTHORIZED DEALERS), IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES EXPRESSED OR IMPLIED INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, PERFORMANCE, OR OTHERWISE.** Any description of the goods or services, whether in writing or made orally by Seller or Seller's agents, specifications, samples, models, bulletins, drawings, diagrams, engineering sheets or similar materials used in connection with Buyer's order are for the sole purpose of identifying the goods and/or services and shall not be construed as an express warranty. Any suggestions by Seller or Seller's agents regarding use, application or suitability of the goods and/or services shall not be construed as an express warranty unless confirmed to be such in writing by Seller.

Additionally, the agreement contained a liability disclaimer provision which provides in relevant part as follows:

> LIMITATION OF LIABILITY/EXCLUSION OF CONSEQUENTIAL DAMAGES AND DISCLAIMER OF OTHER LIABILITIES. Seller liability with respect to the Goods sold hereunder shall be limited to the limited warranty provided in section 18 hereof, and, with respect to other performance of the contract arising out of this offer, shall be limited to the contract price.
>
> **SELLER SHALL NOT BE SUBJECT TO AND DISCLAIMS:**
>
> **(a) ANY OTHER OBLIGATION OR LIABILITIES ARISING OUT OF BREACH OF CONTRACT OR OF WARRANTY,**

---

1. AAR stands for the Association of American Railroads.

**(b) ANY OBLIGATIONS WHATSOEVER ARISING FROM TORT CLAIMS (INCLUDING NEGLIGENCE, PRODUCT LIABILITY AND STRICT LIABILITY) OR ARISING UNDER OTHER THEORIES OF LAW WITH RESPECT TO GOODS SOLD OR SERVICES RENDERED BY SELLER, OR ANY UNDERTAKINGS, ACTS OR OMISSIONS RELATING THERETO, AND**

**(c) ALL CONSEQUENTIAL, INCIDENTAL, SPECIAL AND CONTINGENT DAMAGES WHATSOEVER.**

Without limiting the generality of the foregoing, Seller specifically disclaims any liability for property or personal injury damages, penalties, special or punitive damages, damages for lost profits or revenues, loss of use of Goods or any associated equipment, cost of capital, cost of substitute goods, facilities or services, down-time, shut-down costs, or for any other types of economic loss …

The agreement likewise contained an integration clause which provides as follows:

ENTIRE CONTRACT. it is understood and agreed that the terms contained herein, when accepted by the Buyer, explicitly, by acceptance of the Goods or otherwise shall constitute the entire contract between the parties with respect to the subject matter hereof and the provisions hereof supersede all other prior oral or written communications, negotiations, orders, confirmations and memoranda of every kind and nature between the parties with respect to the Goods. The terms and conditions hereof may not be revised or modified in any way except by written instrument signed by the party against whom enforcement of such revision or modification is sought.

On July 30, 2001, before the parties entered into the agreement defendant Stoughton prepared a report for plaintiff concerning a thermal performance review.

Defendant Stoughton e-mailed an additional copy of the report to plaintiff on August 30, 2002. In said report, defendant Stoughton represented that the thermal performance of the intermodal shipping containers was "[p]resumed to be approximately 400 BTU/hr/F." However, the actual product specifications contained within the agreement are silent concerning thermal performance. Additionally, the agreement failed to incorporate defendant Stoughton's July 30, 2001 report.

In November of 2002, defendant Stoughton started delivering the containers to plaintiff. However, in April of 2003 plaintiff began experiencing problems with defendant Stoughton's containers. Specifically, failures of the welded connection between the support posts and the top header of the containers (also known as a corner casing) occurred which caused separation of the top header from the support posts. Accordingly, plaintiff contacted defendant Stoughton and it sent Mr. Gerry Sill, Vice–President of Engineering, to investigate the problem. In June of 2003, plaintiff experienced the identical problem with another one of defendant Stoughton's containers. As such, at this point, plaintiff put defendant Stoughton in contact with the railroad that reported the problems so they could develop a solution together.

After it investigated the situation, defendant Stoughton agreed (at its own expense) to retrofit every connection on each container. Accordingly, defendant Stoughton designed a repair connection which included the addition of six pass-through bolts at the connection site. All warranty work was performed in Canada and the retrofit was complete in spring of 2004.

However, in early 2005 plaintiff again experienced problems with defendant Stoughton's containers. The containers were failing in the precise area where de-

fendant Stoughton had retrofitted the connections with pass-through bolts. Plaintiff contacted defendant Stoughton after it experienced the identical failure on several containers. Accordingly, defendant Stoughton designed a new repair for the connections at issue. However, it refused to repair the connections under the agreement's warranty because (according to defendant Stoughton) the connection failures were operational and "not covered under warranty." As such, plaintiff has repaired approximately 61 of defendant Stoughton's containers at its own expense. Plaintiff's repair work has addressed the connection failure issue.

Mr. P.W. Shahani (defendants' retained expert) opines that there are several potential causes for the damage to defendant Stoughton's containers. Such causes include: (1) mis-loading of the containers, (2) misplacement of the containers' inter-box connectors, (3) failure to lock the inter-box connectors; and (4) improper use of a jib crane or other less sophisticated machinery when lifting containers on and off rail beds. However, Mr. Shahani indicates that defendant Stoughton's containers did not fail because of any design or manufacturing defects. Rather, he notes that defendant Stoughton designed and manufactured the containers in accordance with AAR specifications. However, plaintiff's expert Mr. Thomas Engle opines that the failures are due to the fact that defendant Stoughton's design of the joint was marginal and the joint becomes sub-marginal when higher loads are imposed.

Additionally, shortly after defendant Stoughton delivered its containers, plaintiff began receiving reports from its customers concerning frozen perishables. Plaintiff investigated the issue and concluded that the freezing problem only occurred in defendant Stoughton's heated shipping containers. Accordingly, in spring of 2004 plaintiff contacted Carrier Transicold (hereinafter Carrier) and requested that it evaluate the thermal performance of defendant Stoughton's containers. In August of 2004, Carrier provided plaintiff with a report concerning the results of its testing. Said report provides in relevant part as follows:

> The UA test revealed an extremely high UA value of 740UA which places tremendous capacity requirements on the refrigeration system.
>
> The Ultra XL unit performing at rated capacity with this trailer can not achieve 0 F box temperature at 100 F ambient temperature.
>
> The Ultra XL unit performing at rated capacity with this trailer can achieve 35 F box temperature at 100 F ambient temperature.
>
> The Ultra XL unit [ ] performing at rated capacity with this trailer can not achieve 55 F box temperature at 0 F ambient temperature.
>
> Recommendation: Improve UA value of trailer.

In September of 2004, plaintiff provided defendant Stoughton with Carrier's report. While defendant Stoughton disputed the report's findings, it failed to perform its own testing of the containers. Additionally, defendant Stoughton failed to provide an explanation for why it believed Carrier's findings were inadequate. Rather, defendant Stoughton opined that the frozen perishables could have been caused by either environmental conditions or a difference in heating units. While according to Carrier's report defendant Stoughton's containers have a UA value of 740UA, it is undisputed that the containers' insulation is in accordance with the product specifications enumerated in the agreement.

## MEMORANDUM

Plaintiff's breach of warranty claim concerns both the thermal performance of

defendant Stoughton's containers and the containers' alleged structural defects. However, defendants assert plaintiff's thermal performance claim is barred by the agreement's integration clause. Additionally, defendants assert plaintiff cannot meet its burden of proof on its structural defect claim because it failed to designate an expert (in accordance with the requirements of the Federal Rules of Civil Procedure) who can testify concerning whether the damage resulted from a design or manufacturing defect. Finally, defendants assert plaintiff's consequential damages claim fails because the agreement limits damages to repair or replacement of the containers. Accordingly, defendants argue their motions for summary judgment should be granted.

Plaintiff concedes that the agreement itself fails to specify the thermal performance of the containers. However, plaintiff asserts defendant Stoughton's July 30, 2001 report explains the thermal performance required under the agreement. Plaintiff asserts the Uniform Commercial Code permits use of this report as evidence because it reflects a course of dealing between the parties and it provides consistent additional contract terms. Additionally, plaintiff asserts expert testimony is not required in this action because a jury can readily comprehend that the problems with the containers were the result of a design or manufacturing defect. Finally, plaintiff asserts its claim for consequential damages is not barred because the exclusive remedy provided by the agreement failed of its essential purpose. Accordingly, plaintiff argues defendants' motions for summary judgment should be denied.

### A. Standard of Review

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over unnecessary or irrelevant facts will not preclude summary judgment. *Id.* Further, a factual issue is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Id.* A court's role in summary judgment is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

To determine whether there is a genuine issue of material fact for trial courts construe all facts in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir.2003) (citation omitted). Additionally, a court draws all reasonable inferences in favor of that party. *Id.* However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id.* at 283 (citations omitted). If a court determines that the material facts are not in dispute then the "sole question is whether the moving party is entitled to judgment as a matter of law." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997) (citation omitted).

### B. Breach of Warranty for Thermal Performance

Because the subject of the agreement concerns the sale of goods, the agreement is governed by the Uniform Commercial Code. *See* Wis. Stat. § 402.102.[2] According-

---

2. The parties agree Wisconsin law governs this action.

ly, Wis. Stat. § 402.202 applies to this action. Said statute provides as follows:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

(1) By course of dealing or usage of trade (s.401.205) or by course of performance (s.402.208);

(2) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

"Course of dealing" is defined under Wis Stat. § 401.205 in relevant part as follows:

(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct. . . .

Additionally, "course of performance" is defined under Wis. Stat. § 402.208 in relevant part as follows:

(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement. . . .

■ There is no question that the parties intended the agreement at issue to serve as a final expression of their agreement. This conclusion is supported by the plain language of the integration clause contained within the agreement. Said provision provides as follows:

ENTIRE CONTRACT. it is understood and agreed that the terms contained herein, when accepted by the Buyer, explicitly, by acceptance of the Goods or otherwise shall constitute the entire contract between the parties with respect to the subject matter hereof and the provisions hereof supersede all other prior oral or written communications, negotiations, orders, confirmations and memoranda of every kind and nature between the parties with respect to the Goods. The terms and conditions hereof may not be revised or modified in any way except by written instrument signed by the party against whom enforcement of such revision or modification is sought.

Additionally, it is undisputed that the agreement: (1) failed to incorporate defendant Stoughton's July 30, 2001 report; and (2) is silent concerning the containers' thermal performance. Accordingly, defendant Stoughton's July 30, 2001 report can be used to explain or supplement the terms of the agreement only if: (1) there was a "course of dealing" between the parties, (2) there was a "course of performance" between the parties; or (3) the report serves as evidence of "consistent additional terms." The Court finds that none of the three exceptions apply to this action. Accordingly, defendants' motion for summary judgment on plaintiff's thermal performance claim is granted.

■ First, concerning "course of dealing" Wisconsin courts have determined that a single incident does not constitute a "course of dealing" within the meaning of Wis. Stat. § 401.205. *See Novelly Oil Co. v. Mathy Constr. Co.*, 147 Wis.2d 613, 618, 433 N.W.2d 628, 630 n. (Wis.App.1988) (citation omitted). Additionally, the official comment to the Uniform Commercial Code provides that "[c]ourse of dealing under subsection (1) is restricted, literally, to a sequence of conduct between the parties

previous to the agreement." *See* comment to Wis. Stat. § 401.205. It is undisputed that defendant Stoughton sent plaintiff its July 30, 2001 report on only one occasion before the parties entered into the agreement. Accordingly, this single incident cannot constitute "a sequence of conduct between the parties previous to the agreement," *Id.*, so as to fall under the exception enumerated in Wis. Stat. § 402.202(1).[3] As such, the "course of dealing" exception to the parol evidence rule does not apply to this action.[4]

◼ Additionally, as it concerns "course of performance" the official comment to the Uniform Commercial Code provides that "[a] single occasion of conduct does not fall within the language of this section." *See* comment to Wis. Stat. § 402.208. Plaintiff's only "course of performance" argument concerns defendant Stoughton's action of e-mailing its July 30, 2001 report to plaintiff on August 30, 2002. Again, this single occasion cannot serve as a "course of performance" so as to fall under the exception enumerated in Wis. Stat. § 402.202(1). As such, the "course of performance" exception to the parol evidence rule likewise does not apply to this action.

◼ Finally, as it concerns "consistent additional terms" the plain language of Wis. Stat. § 402.202(2) provides that an agreement may be explained or supplemented "[b]y evidence of consistent additional terms *unless the court finds the writing to have been intended also as a complete and exclusive statement of the*

*terms of the agreement."* Wis. Stat. § 402. 202(2) (emphasis added). Just as there is no question that the parties intended the agreement at issue to serve as a final expression of their agreement, there is no question that the agreement was likewise intended to serve as a "complete and exclusive statement of the terms of the agreement." *Id.* Again, the plain language of the integration clause supports this conclusion.

The integration clause contained within the agreement provides in relevant part as follows:

... the provisions hereof supersede all other prior oral or written communications, negotiations, orders, confirmations and memoranda of every kind and nature between the parties with respect to the Goods. The terms and conditions hereof may not be revised or modified in any way except by written instrument signed by the party against whom enforcement of such revision or modification is sought.

Such language unambiguously explains that the terms of the agreement supersede all prior written communications between the parties including those contained within defendant Stoughton's July 30, 2001 report. Additionally, the plain language of the clause makes it clear that the terms of the agreement may not be revised or modified in any way which renders the agreement a "complete and exclusive statement of the terms of the agreement."[5] *Id.* Accordingly, the exception to the parol evi-

---

**3.** Plaintiff argues the report itself is a course of conduct because defendant Stoughton engaged in testing, prepared the report, and then sent the report. This argument is unavailing.

**4.** There is no evidence that plaintiff and defendant Stoughton engaged in prior business transactions before entering into the agreement for the containers at issue. According-

ly, the Court need not address whether the containers are of the type that had been delivered to plaintiff during past transactions.

**5.** Defendant Stoughton's July 30, 2001 report cannot be viewed as a written modification of the agreement because it was initially prepared and presented to plaintiff before the parties entered into the agreement.

dence rule provided in Wis. Stat. § 402.202(2) likewise does not apply to this action. As such, defendants' motion for summary judgment on plaintiff's thermal performance claim is granted because the agreement itself is silent as to any thermal performance guarantee and it is undisputed that the containers' insulation complied with the product specifications enumerated in the agreement.

## C. Breach of Warranty for Structural Defects

■ Defendants' sole argument concerning plaintiff's breach of warranty claim for structural defects is that plaintiff cannot meet its burden of proof without providing expert testimony and because plaintiff failed to designate an expert in accordance with the Federal Rules of Civil Procedure dismissal of the action is appropriate.

Federal Rule of Civil Procedure 37(c)(1) provides in relevant part as follows:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... or on a motion any witness or information not so disclosed. . . .

Additionally, Federal Rule of Civil Procedure 26(a)(2) provides in relevant part as follows:

> (A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. ... (C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court ... the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial ...

■■ The sanction of exclusion under Rule 37(c)(1) is " 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.' " *Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir.1996) (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996)). The determination of whether a Rule 26(a) violation is justified or harmless "is entrusted to the broad discretion of the district court." *Id.* (citing *Finley*, at 1231).

There is no question that plaintiff failed to designate Mr. Engle in accordance with Rule 26(a). Accordingly, the Court is "well within its discretion to exclude [Mr. Engle's] untimely proffered ... testimony" during plaintiff's case-in-chief. *Hill v. Porter Mem'l Hosp.*, 90 F.3d 220, 224 (7th Cir.1996). However, the Court finds that plaintiff's failure was harmless. As such, Mr. Engle can testify at trial and defendants' motion for summary judgment on plaintiff's breach of warranty claim for structural defects is denied.

Plaintiff filed Mr. Engle's report on March 7, 2007. Trial in this action is scheduled to commence on April 23, 2007. Accordingly, defendants have sufficient time to both depose Mr. Engle and have their already retained expert Mr. P.W. Shahani prepare another supplemental report if they so wish. While plaintiff's untimely disclosure is certainly not looked upon favorably by the Court, there is no other discernible basis for concluding that defendants have been prejudiced by plaintiff's tardy disclosure. Accordingly, plaintiff's failure was harmless under Rule 37(c)(1) and Mr. Engle is permitted to testify at trial. As such, defendants' motion for summary judgment is denied because it was premised on the argument that plaintiff cannot meet its burden of proof without expert testimony.

## D. Consequential Damages

The Uniform Commercial Code as adopted in Wisconsin allows parties to limit a buyer's remedies and exclude consequential damages. Wis. Stat. § 402.719 provides for such contractual modification or limitation of remedies. Said statute provides in relevant part as follows:

> ... (a) The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
>
> (b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in chs. 401 to 411.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. . . .

The agreement between the parties limits the measure of damages recoverable and excludes consequential damages. This is evidenced by the plain language of both the "Limited Warranty" provision and the "Limitation of Liability/Exclusion of Consequential Damages" provision contained within the agreement. Accordingly, under the terms of the agreement plaintiff's remedy is limited to either "repair or replacement" of the containers. Such a limitation is allowed under Wisconsin law unless the exclusion of consequential damages is "unconscionable" or the exclusive warranty "fail[ed] of its essential purpose." *Id.*

Plaintiff does not argue that the exclusion of consequential damages was unconscionable. Rather, plaintiff argues the exclusive "repair or replacement" warranty failed of its essential purpose. However, the Court finds that the exclusive warranty did not fail of its essential purpose. Accordingly, defendants' motion for summary judgment on plaintiff's consequential damages claim is granted.

An exclusive repair or replacement warranty fails of its essential purpose when repairing or replacing the damaged good would not solve the problem. *See Fid. & Deposit Co. of Md. v. Krebs Engineers*, 859 F.2d 501, 505 (7th Cir.1988)(Wisconsin law)(the limited remedy failed of its essential purpose because replacing or repairing the scrubber at issue would not have solved the problem). However, there is no evidence that either repairing or replacing the containers at issue would not solve the connection failure problem. In fact, plaintiff admits that it has repaired 61 of defendant Stoughton's containers at its own expense and that such repairs have addressed the connection failure issue. While at the conclusion of trial the jury may find that defendants are obligated to pay for such repairs, there is no evidence that the exclusive warranty failed of its essential purpose. Accordingly, defendants are entitled to summary judgment as a matter of law on plaintiff's consequential damages claim. *Santaella*, at 461 (citation omitted).[6]

## ORDER

IT IS ORDERED that defendants' first motion for summary judgment on plaintiff's breach of warranty claim for thermal performance is GRANTED.

---

6. The Court is in receipt of plaintiff's April 3, 2007 motion to supplement the summary judgment record with newly discovered evidence. The Court has reviewed plaintiff's motion and determined that the evidence contained within does not affect the Court's ruling on defendants' motions for summary judgment.

IT IS FURTHER ORDERED that defendants' second motion for summary judgment is GRANTED as it concerns plaintiff's claim for consequential damages and in all other respects is DENIED.