Andy GRIFFITH, Plaintiff,

v.

William FENRICK n/k/a Andrew Jackson Griffith, Defendant.

No. 06–C–635–S.

United States District Court, W.D. Wisconsin.

May 4, 2007.

Andrew J. Griffith, Platteville, WI, for Defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Andy Griffith commenced this action against defendant William Fenrick

n/k/a Andrew Jackson Griffith alleging invasion of privacy in violation of Wis. Stat. § 995.50(2)(b), violation of United States Trademark Laws, 15 U.S.C. § 1125(a)(1)(A), and Wisconsin common law trade name infringement. Jurisdiction is based on 28 U.S.C. § 1331. The matter is presently before the Court on cross-motions for summary judgment. The following facts relevant to the parties' motions are undisputed.

## BACKGROUND

Plaintiff is a famous television and motion picture actor. In the 1960's plaintiff starred in the popular television series "The Andy Griffith Show" in which he portrayed folksy, small town sheriff Andy Taylor ·of Mayberry who shared simple heartfelt wisdom. "The Andy Griffith Show" (which is still shown in syndication) was one of the more popular television series in history, generating several successful spin-offs including "Mayberry R.F.D." and "Gomer Pile U.S.M.C." Plaintiff subsequently had other prominent acting roles. As an actor he has promoted himself solely by his name "Andy Griffith."

Plaintiff has participated in advertisements in the North Carolina Governor's race and in twelve different North Carolina State Senate races. He is very selective on how his image and endorsements are portrayed by campaigns.

Plaintiff serves as a principal of Mayberry Enterprises. Plaintiff uses Mayberry Enterprises for the merchandising and licensing of his personal intellectual property rights including names, likeness, voices, characters, catch words, slogans, distinctive phrases, trademarks and trade names. In 1989, Mayberry Enterprises granted Viacom the merchandising and licensing rights to "The Andy Griffith Show." However, plaintiff retained a right of approval over all merchandising and business proposals associated with both his name and "The Andy Griffith Show." Plaintiff has realized revenues in excess of $100,000 from these merchandising and licensing agreements.

On May 3, 2006, defendant William Fenrick filed a petition for change of name with the Circuit Court for Milwaukee County in which he sought to change his name to Andrew Jackson Griffith. In defendant's petition, he listed his address as 219 East Keefe Avenue, Milwaukee, Wisconsin where he lived from approximately mid-April, 2006 until approximately the last week of June, 2006. On June 19, 2006 a hearing was held before Milwaukee County Circuit Court Judge Michael J. Dwyer who granted defendant's petition for change of name.

In late June, 2006 defendant moved to his parents' home in Platteville, Wisconsin. On July 10, 2006 defendant declared and filed his candidacy for Sheriff of Grant County, Wisconsin. His name was listed as "Andy Griffith" on the ballot. During his campaign, defendant publicly stated that he believed an area of concern in Grant County was speed traps. He specifically referenced plaintiff and Mayberry in expressing his distaste for such law enforcement practices. For example, defendant stated "[t]hey never did that in Mayberry! They never did unethical stuff like that in Mayberry. See, that's the thing about Andy Griffith. He was honest and straightforward and people respected him for that." Additionally, defendant stated that "[w]hat he wanted to do was bring attention to this sheriff's race and the only way that [he] could think of to do it— actually, the best way that [he] could think of doing it—was changing [his] name to Andy Griffith."

As part of his election campaign defendant actively referred to and used the slogan "Andy Griffith for Sheriff" on t-

shirts, yard signs, wristbands, condoms, and other items. He likewise used the name "Andy Griffith" on the letterhead of his campaign literature. In addition, one of defendant's friends Mr. Neal Delfeld designed two websites for his campaign: *www.Griffith4Sheriff.com* and *www.Andy GriffithforSheriff.com.* The websites were never properly completed during defendant's campaign. However, defendant's website currently contains a link to a PayPal account which is set up for the purpose of soliciting donations. No one has ever contributed to this account for any reason.

During the campaign, several local newspapers and television stations interviewed defendant about his campaign and the reason behind his name change. Defendant lost the election for Sheriff in November of 2006. However, he has stated that he intends to run for Sheriff of Grant County again in 2008 using the name "Andy Griffith." Additionally, he has expressed his intent to engage in print and other media promotions in the future using the name "Andy Griffith" for his campaigns. Plaintiff never consented to defendant's use of the name "Andy Griffith" in connection with either his candidacy for Sheriff or in connection with his campaign promotions.

## MEMORANDUM

Plaintiff asserts the name "Andy Griffith" is distinctive and defendant wrongfully used the name in commerce which caused both blurring and tarnishment to plaintiff's trade name. Plaintiff further contends the undisputed facts demonstrate that defendant violated his right to privacy within the meaning of Wis. Stat. § 995.50(2)(b). Defendant argues that the name "Andy Griffith" is not distinctive enough to merit protection and there is no evidence that: (1) he used the name "Andy Griffith" in commerce, (2) actual blurring

occurred; or (3) tarnishment to plaintiff's "mark" occurred. Further, defendant asserts plaintiff failed to establish that he has been commercially damaged by defendant's conduct. Defendant asserts that plaintiff has failed to demonstrate that he violated plaintiff's right to privacy contrary to Wis. Stat. § 995.50(2)(b)

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over unnecessary or irrelevant facts will not preclude summary judgment. *Id.* A factual issue is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Id.*

To determine whether there is a genuine issue of material fact for trial courts construe all facts in the light most favorable to the non-moving party. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir.2003) (citation omitted). Additionally, a court draws all reasonable inferences in favor of that party. *Id.* However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id.* at 283 (citations omitted). If a court determines that the material facts are not in dispute then the "sole question is whether the moving party is entitled to judgment as a matter of law." *Santaella v. Metro. Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir.1997) (citation omitted).

## Lanham Act Claims

■ Plaintiff's complaint alleges a claim for violation of 15 U.S.C. § 1125(a) which provides in relevant part as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

Particularly, plaintiff alleges that defendant's use of the name Andy Griffith in connection with his sheriff campaigns will cause members of the public to believe that defendant's candidacy is sponsored or approved by plaintiff.

■ There is no evidence that anyone believed that plaintiff sponsored or approved defendant's candidacy. There is no logical reason to think that having the same name as another implies sponsorship by the person with whom you share the name. It is likely that defendant's use of the name Andy Griffith in his campaign would cause potential voters to connect it to the famous actor and to his famous sheriff character. However, there is no basis or evidence to suggest the leap to confusion as to sponsorship by plaintiff. Some voters may have been aware that defendant had changed his name for the purpose of gaining an attention grabbing advantage in the election, but that is not the basis for a claim of confusion as to sponsorship. Trademark infringement cannot be proved by showing that defendant pirated plaintiff's name:

The purpose of trademark law (setting to one side dilution cases) is to prevent confusion by consumers concerning the sources of the products they buy. Knowing or thinking that a producer is a pirate is not a confusion about source; you know who the source is, whether you think him a good guy or a bad guy.

*Peaceable Planet, Inc. v. TY, Inc.*, 362 F.3d 986, 993 (7th Cir.2004). Voters knew who defendant was, they knew he was not plaintiff, some knew he adopted plaintiff's name, but none were confused.

There is not a scintilla of evidence that anyone thought plaintiff was running for Grant County sheriff or that plaintiff was backing defendant's campaign for sheriff. The only argument plaintiff can muster is that he lent his name to certain state political campaigns in North Carolina. Of course none of those candidates were named Andy Griffith. There is no logical reason to think that because plaintiff has participated in North Carolina politics he is likely to have approved a Wisconsin candidate with the same name. Because there is no evidence that anyone was or is likely to be confused as to whether plaintiff sponsored or approved defendant's campaign there is no viable claim under § 1125(a).

■ Plaintiff's Lanham Act motion for summary judgment is based on trademark dilution, 15 U.S.C. § 1125(c), a claim mentioned nowhere in the complaint. Nevertheless, defendant apparently acquiesces in its inclusion, addressing the claim fully on its merits in the summary judgment briefing and impliedly conceding to amendment. *See* Rule 15(b), Fed.R.Civ.P. Accordingly, the Court addresses it on its merits.

■ As a matter of law, defendant is entitled to prevail on the statutory defense in 15 U.S.C. § 1125(c)(4)(B): "The following shall not be actionable under this section: ... Noncommercial use of a mark." This exception to the anti-dilution provision is intended to preclude applications to speech protected by the First Amendment:

In 1988, when Congress adopted amendments to the Lanham Act, it gave consideration to an antidilution provision. During the hearings on the 1988 amendments, objections to that provision based on a concern that it might have applied to expression protected by the First Amendment were voiced and the provision was deleted from the amendments. H.R.Rep. No. 100–1028 (1988). The bill, H.R. 1295, 104th Cong., 1st Sess., that was introduced in the House in 1995, and ultimately enacted as the FTDA, included two exceptions designed to avoid those concerns: a provision allowing "fair use" of a registered mark in comparative advertising or promotion, and the provision that noncommercial use of a mark shall not constitute dilution. See 15 U.S.C. § 1125(c)(4).

*Moseley v. V. Secret Catalogue, Inc.* 537 U.S. 418, 430–31, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003). Accordingly, courts applying the exception have held that all speech which is not purely commercial, and would therefore be protected by the First Amendment, is subject to the exception. *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 906 (9th Cir.2002). "If speech is not 'purely commercial'—that is if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection." *Id.*

Defendant's speech was not commercial. The use of the Andy Griffith name was not to propose a commercial transaction but to seek elective office, fundamental First Amendment protected speech. Not only

was the speech not purely commercial, it was entirely noncommercial as it did not propose any commercial transactions. To the extent that defendant sought campaign contributions, any such solicitations were ancillary to his political campaign and protected speech. Not surprisingly, the only Courts to consider dilution claims in the political context have held them barred. In *American Family Life Ins. Co. v. Hagan,* 266 F.Supp.2d 682 (N.D.Ohio 2002), plaintiff brought a dilution claim seeking to enjoin defendant from using a facsimile of the famous AFLAC duck in his political ads to gain attention for his campaign:

That the consuming public may associate the AFLAC duck with the Taft-Quack character—a proposition the Court accepts—is an insufficient predicate to support injunctive relief of political speech. The First Amendment protects Hagan from AFLAC's dilution claim under the Lanham Act.

*Id.* at 701. Adopting the same analysis, the Court rejected dilution claims by MasterCard to enjoin Ralph Nader's use of their advertising slogans in his 2000 presidential campaign. *MasterCard Intern., Inc. v. Nader 2000 Primary Committee, Inc.,* 70 U.S.P.Q.2d 1046 (S.D.N.Y.2004). The leading trademark treatise reaches the same conclusion: "Clearly, the use of a commercial mark in a political campaign is 'noncommercial' and cannot trigger the dilution provisions." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 24:97.20 (4th Ed.2007).

**State Law Claims**

■ The failure of plaintiff's Lanham Act claims leaves only his state law unfair competition and right to privacy claims. The initial task is to assess whether the Court can or should continue to exercise jurisdiction over these claims. Two possible jurisdictional bases remain: diversity

jurisdiction, 28 U.S.C. § 1332 and supplemental jurisdiction, 28 U.S.C. § 1367.

Considering first the question of diversity jurisdiction it is undisputed that plaintiff is a North Carolina citizen and defendant a citizen of Wisconsin. However, there is genuine issue concerning whether there is $75,000 in controversy. As the proponent of jurisdiction, plaintiff bears the burden to demonstrate a sufficient amount in controversy. However, the amount claimed in the complaint controls if made in apparent good faith unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir.2006). The complaint contains the conclusory allegation that "the matter in controversy exceeds $75,000." However, consideration of the facts in the record leads to the inescapable conclusion that if plaintiff prevailed his relief could not amount to $75,000.

Plaintiff suggests three possible elements of his damages: (1) loss of merchandising fees, (2) damage to his reputation, (3) unjust enrichment to defendant. The first asserted element has superficial appeal because of the $100,000 earned in such fees. However, on closer analysis the element lacks substance. The $100,000 in fees were earned over a period of eighteen years, suggesting annual revenue of about $5600. Furthermore, there is neither a factual nor logical basis to suppose that the demand for Mayberry memorabilia will be dampened by plaintiff's run for sheriff. There is no factual basis for a jury to attribute a reduction in this income stream to plaintiff's candidacy.

As it concerns defendant's reputation, plaintiff's campaign attempted to take advantage of a connection to sheriff Taylor's honesty and ethical behavior—hardly connections which would suggest damage to plaintiff's reputation. The sole support for reputation damage is the plaintiff's conclusory affidavit in which he states that defendant's "use of my name has harmed my reputation." No evidence suggest that plaintiff's campaign in fact caused such injury. Section 995.50(4) provides that "compensatory damages shall not be presumed in the absence of proof." Finally, as it concerns unjust enrichment the facts establish that defendant lost the election and received no public contributions and so was not in any way enriched by his use of the name.

Based on the facts before the Court and plaintiff's arguments concerning his potential damages, it can be determined to a legal certainty that his damages could not reach $75,000.

■ The remaining issue is whether the Court should exercise continuing supplemental jurisdiction over the state claims. Pursuant to 28 U.S.C. § 1367(c)(3) the Court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." Notwithstanding the discretionary phrasing of the provision the Seventh Circuit has established a presumption of dismissal:

> In the usual case in which all federal claims are dismissed before trial, the balance of [the factors of judicial economy, convenience, fairness and comity] will point to declining to exercise jurisdiction over any pendent state-law claims. Hence, the general rule is that, when federal claims are dismissed before trial, the federal court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.

*Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994).

In addition to the § 1367(c)(3) presumption of dismissal under the circumstances

of this case, declining to exercise jurisdiction furthers the intent of § 1367(c)(1) which separately authorizes dismissal if the state claim presents a novel or complex issues of state law. The remaining claims present interesting and novel issues concerning the relationship between Wisconsin's right of privacy and name change statutes. Specifically, whether a name can be legally changed for political advantage and whether a person is entitled to pursue election under a legally changed name, notwithstanding the prohibitions of § 995.50, are issues best resolved by the Wisconsin courts.

## ORDER

IT IS ORDERED that defendants motion for summary judgment on plaintiff's Lanham Act claims is GRANTED.

IT IS FURTHER ORDERED that the remaining state law claims be dismissed without prejudice for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that judgment be entered accordingly.